F. #2010R01910

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M-10-1142**

---------------------------------------X

UNITED STATES OF AMERICA

      -against-

ADRIAN MUNOZ PEREZ,
URBANO MUNOZ PEREZ,
    also known as "Jorge,"
GUSTAVO MUNOZ PEREZ,
EDGAR MUNOZ HERNANDEZ and
LORENZO SAUCEDO XICOTENCAL,

        Defendants.

COMPLAINT
(8 U.S.C. §§
1324(a)(1)(A)(v);
18 U.S.C. §§
1952(a)(3)(A), and 2)

---------------------------------------X

EASTERN DISTRICT OF NEW YORK, SS:

        CHRISTOPHER IATAURO, being duly sworn, deposes and

states that he is a Special Agent with Department of Homeland

Security Immigration and Customs Enforcement, duly appointed

according to law and acting as such.

        Upon information and belief, there is probable cause to

believe that in or about and between January 2006 and September

2010, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants ADRIAN

MUNOZ PEREZ, URBANO MUNOZ PEREZ, also known as "Jorge," GUSTAVO

MUNOZ PEREZ, EDGAR MUNOZ HERNANDEZ and LORENZO SAUCEDO

XICOTENCAL, together with others, knowing and in reckless

disregard of the fact that aliens had come to, entered and

remained in the United States in violation of law, did knowingly

and intentionally conspire to transport and move said aliens within the United States by means of transportation, in furtherance of such violation of law, contrary to Title 8, United States Code, Section 1324(a)(1)(A)(ii).

(Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I))

In or about and between January 2006 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ADRIAN MUNOZ PEREZ, URBANO MUNOZ PEREZ, also known as "Jorge," GUSTAVO MUNOZ PEREZ, EDGAR MUNOZ HERNANDEZ and LORENZO SAUCEDO XICOTENCAL, together with others, did knowingly and intentionally use a facility in interstate commerce, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit: a business enterprise involving prostitution, in violation of the laws of the State of New York, and did thereafter perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3)(A) and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

## Introduction

1.    I have been a Special Agent with Department of Homeland Security Immigration and Customs Enforcement ("ICE") since March 2009.  I have participated in investigations of sex trafficking, forced labor and alien smuggling, and, among other things, have conducted or participated in surveillance, the execution of search warrants, debriefings of informants and reviews of taped conversations.  I am one of the ICE agents working on this investigation and am familiar with the facts of this case through my interviews of witnesses, review of records and discussions with other law enforcement officers.

## Probable Cause

2.    On the September 27, 2010, as part of an ongoing investigation, I and another ICE agent conducted surveillance in the vicinity of 34th Avenue and 98th Street in the Corona section of Queens, New York.

3.    At approximately 2:00 p.m., a van arrived in the area, and a young woman wearing extremely short shorts and a t-

---

[1]    Because the purpose of this Affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.  In addition, when I rely on statements made by others, such statements are set forth in part and in substance unless otherwise indicated.

4

shirt,[2/] exited the van.  The young woman entered a house in the area while the van waited outside.  About 15 minutes later, the young woman exited the house and re-entered the van, which then drove away from the location.  I and another ICE agent followed the van, which circled the block several times in a surveillance conscious manner before pulling into a parking lot.

4.    After the van parked, I and the other ICE agent approached it and spoke to the occupants.  Inside the van was the driver, who was later identified as EDGAR MUNOZ HERNANDEZ, and the young woman we had previously observed.[3/] When interviewed separately, they both admitted to being in the United States illegally and that the young woman was working in prostitution. Both individuals were administratively arrested and brought to the ICE office for processing.

Statements of EDGAR MUNOZ HERNANDEZ

5.    Once at the ICE office, EDGAR MUNOZ HERNANDEZ was advised of and waived his Miranda rights.  During an interview by ICE agents, the defendant stated:

a.    He resides with his father, ADRIAN MUNOZ PEREZ, two uncles, URBANO MUNOZ PEREZ, also known as "Jorge," and

---

[2]   The weather that day was cold and rainy.

[3]   EDGAR MUNOZ HERNANDEZ and the young woman appeared to speak only Spanish.  The agent who was with me speaks conversation-level Spanish, and a native Spanish-speaking agent also assisted in translating by telephone.

5

GUSTAVO MUNOZ PEREZ, as well as LORENZO SAUCEDO XICOTENCAL and several other individuals, in an apartment on the second and third floors of a house located at 35-29 98th Street in Corona, Queens (the "98th Street Residence").

b. In or about 2004, EDGAR MUNOZ HERNANDEZ began working in the prostitution business by taking "tickets" at a brothel in Queens.[4]

c. In or about 2006, he began working as a driver in the "delivery" prostitution business.[5] Based on telephone calls he received from pimps and prostitutes, he would drive to various locations to pick up young women working as prostitutes and take them to client's residences. He generally received $60 for an eight-hour shift.

d. He works with his family, including his father, ADRIAN MUNOZ PEREZ, and his uncles, GUSTAVO MUNOZ PEREZ and Juan Munoz Perez, in the delivery prostitution business. He and his family provide transportation services to prostitutes, and they advertise their prostitution delivery services by handing out business cards to men along busy commercial thoroughfares in Queens. His family is like the "mafia."

---

[4] A "ticket" refers to a customer's receipt after he has paid for and received services at the brothel.

[5] A "delivery" prostitution business is one in which the prostitutes are transported to different residences where one or more clients receive the prostitution services.

6

e.    At the time he was stopped by ICE on
September 27th, he was transporting a young Mexican woman who was
working as a prostitute to clients' residences.  He knew that the
young woman was residing illegally in the United States.

Search of the 98th Street Residence

6.    Based on the information provided by EDGAR MUNOZ
HERNANDEZ, ICE agents went to the 98th Street Residence at
approximately midnight on September 27, 2010 (going into
September 28th).  They knocked on the door of the residence and
were met by ADRIAN MUNOZ PEREZ.  The agents identified themselves
as ICE agents and requested consent to enter and search the
location, which was given, orally and in writing, by ADRIAN MUNOZ
PEREZ.[6]/

7.    Inside the 98th Street Residence were the
defendants as well as several other individuals, including two
young women, one of whom was pregnant.  In addition, the agents
found numerous boxes of business cards bearing pornographic
photographs of nude women and advertising "Free Delivery" or
"Delivery a Tu Casa [Home Delivery]" of, inter alia, "Chicas
Calientes" or "Ricas Menas," which translate, respectively, as
"hot" or "delicious girls."  The cards contained different
telephone numbers, four of which correspond to cellphones

---

[6]    All interviews and conversations with the defendants and
others described herein were conducted in Spanish.

subscribed to by GUSTAVO MUNOZ PEREZ or his girlfriend, who was determined to be the pregnant woman found at the 98th Street Residence at the time of the search.$^{2/}$  ICE agents also found approximately 15 cellphones at the apartment, as well as a receipt from the company that produced the business cards identifying the customer as "Mirian/Gustavo."

8.    ICE agents asked each of the defendants about their immigration status, and each acknowledged that he was residing in the United States illegally.  The other individuals at the 98th Street Residence, including the two women, also admitted to being in the United States illegally.  All occupants of the 98th Street Residence were administratively arrested and taken into ICE custody.

Statements of ADRIAN MUNOZ PEREZ

9.    Following his administrative arrest, the defendant ADRIAN MUNOZ PEREZ was advised of and waived his Miranda rights. During an interview by ICE agents, the defendant stated:

a.    He has been living in the United States for the past six years.  His brother, GUSTAVO MUNOZ PEREZ, has been living here for the past ten years.

b.    For about the past three years, ADRIAN MUNOZ PEREZ has been working in a business that transports prostitutes.

---

[7]    ICE is continuing to investigate to determine the identities of the subscribers for the other telephones numbers on the cards.

Although he sometimes transports women, he usually directs other drivers to do so. His brother, GUSTAVO MUNOZ PEREZ, also transports prostitutes and directs other drivers to transport them.

c.    His "organization" delivers women to locations in Queens. The women charge $35/client. Half of the money earned by the women is paid to the drivers. He, as the "owner of the route," receives the money from the drivers, out of which he usually pays each driver $60-70/shift. When the workload becomes too great, the organization hires additional drivers to transport the women.

d.    Another brother, Juan Carlos Munoz Perez, owns the cars used by his family to transport prostitutes.

f.    All members of the organization own a portion of the business.

g.    The two women at the 98th Street Residence at the time of the search are GUSTAVO MUNOZ PEREZ's girlfriend and EDGAR MUNOZ HERNANDEZ's wife. Both women previously worked in prostitution.

Statements of URBANO MUNOZ PEREZ, also known as "Jorge"

10.    Following his administrative arrest, the defendant URBANO MUNOZ PEREZ, also known as "Jorge," was advised of and waived his Miranda rights. During an interview by ICE agents, the defendant stated:

          a.    He entered the United States illegally in November 2009, and has lived at the 98th Street Residence since that time.

          b.    He has been working as a driver for prostitutes for the past six months.  Usually, he receives telephone calls from the women directly, but sometimes other members of the "organization" receive the calls to which he responds.

          c.    The prostitutes earn \$35/client, and at the end of their shifts, they give him half of their earnings, which he, in turn, delivers to the "owner of the route."  He is paid \$60-70 each day for delivering prostitutes.

          d.    On occasion, he speaks to the women about how they were smuggled into the United States and how much they earn as prostitutes.

          e.    His brother, Juan Munoz Perez, owns the vehicles used by the business to transport women.

Statements of GUSTAVO MUNOZ PEREZ

          11.    Following his administrative arrest, the defendant GUSTAVO MUNOZ PEREZ was advised of and waived his Miranda rights.  During an interview by ICE agents, the defendant stated:

          a.    He entered the United States illegally in 1999.

b.   For the past four or five months, he has been working as a driver for the "organization" and also performs other functions as needed, such as distributing prostitution business cards.[8]

c.   He receives telephone calls from women working as prostitutes, as well as prostitution clients, seeking his transportation services.  The women charge \$35/client.

d.   He believes that the women who work as prostitutes are illegally in the United States.

e.   One of the women at the 98th Street Residence at the time of the search is his girlfriend.

Statements of LORENZO SAUCEDO XICOTENCAL

12.   Following his administrative arrest, the defendant LORENZO SAUCEDO XICOTENCAL was advised of and waived his Miranda rights.  During an interview by ICE agents, the defendant stated:

a.   He entered the United States illegally in 2006, and has been living with the defendant URBANO MUNOZ PEREZ, also known as "Jorge," whom he knew in Mexico, at the 98th Street Residence for the past 1-1/2 years.

---

[8]  Although admitting that he was involved in his family's delivery prostitution business, based on the other evidence obtained during the investigation and search (as partially described herein), it appears that GUSTAVO MUNOZ PEREZ minimized his role in the business.

11

      b.    For the past year, he has been distributing business cards for URBANO MUNOZ PEREZ to promote prostitution, for which he is paid $50/day.  He distributes approximately 60 cards/day.  The phone numbers on the cards belong to URBANO MUNOZ PEREZ.

      WHEREFORE, your deponent respectfully requests that the defendants ADRIAN MUNOZ PEREZ, URBANO MUNOZ PEREZ, also known as "Jorge," GUSTAVO MUNOZ PEREZ, EDGAR MUNOZ HERNANDEZ and LORENZO SAUCEDO XICOTENCAL be dealt with according to law.

CHRISTOPHER IATAURO
Special Agent
Immigration and Customs Enforcement

Sworn to before me this
'l6 day of October, 2010

DGE
K